## ESTATE OF CHRIST. MARKLEY, DECEASED.

### APPEAL BY J. S. MARKLEY ET AL. FROM THE ORPHANS' COURT OF MONTGOMERY COUNTY.

Argued February 6, 1890—Decided February 17, 1890.

(*a*) A testator devised and bequeathed to his wife all his "property and effects, real, personal and mixed, of whatever nature and kind, for and during her natural life," and after her death "all the residue of said property, real, personal and mixed," to his children. A considerable portion of the personalty consisted of crops, stock on the farm, and farming implements:

1. No distinction being made between the character of the property mentioned and money at interest, the testator intended his wife to take the whole of the personalty absolutely, if it was needed for her support, and only the residue, if any, was to go to his children after her death.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 64 January Term 1890, Sup. Ct.; court below, number and term not given.

---

* See Gold's Estate, post, 133 Pa.

Opinion of Court below.

On May 5, 1888, the final account of George P. Markley, executor of the will of Christopher Markley, deceased, was filed and referred to *Mr. Louis M. Childs*, as auditor, to hear and determine exceptions and to report distribution.

It was found by the auditor that the testator had died in 1884, leaving a widow and three sons. By his will, dated May 13, 1864, and duly admitted to probate, he provided as follows:

" 2. I give, devise and bequeath unto my beloved wife Elizabeth, formerly Elizabeth Staley, all my property and effects, real, personal and mixed, of whatever nature and kind, for and during her natural life.

" 3. It is my will and I hereby order and direct that at the death of my wife Elizabeth all of the residue of said property, real, personal and mixed, shall go to my children, John S., Samuel and George P. Markley, and to their heirs in equal shares absolutely. And I hereby appoint my son George P. Markley my executor."

The personal estate, as inventoried, amounted to $5,131.31; of this $2,114.90 consisted of stock, crops and farming implements, the balance in money and securities. The farm was said to be worth $10,000. The widow resided on the farm until her death. The executor, who was one of the testator's sons, took credit in his account with all the personal estate of the testator, as having been paid to the widow in her lifetime. To this credit exceptions were filed by John S. and Samuel Markley, the other sons.

The auditor, considering Cox v. Rogers, 77 Pa. 160; Jauretche v. Proctor, 48 Pa. 466; Pennock's Est., 20 Pa. 268; Ref. Church v. Disbrow, 52 Pa. 219; Green's App., 42 Pa. 26; Follweiler's App., 102 Pa. 581; Hambright's App., 2 Gr. 320; Hinkle's App., 116 Pa. 490; Drennan's App., 118 Pa. 176, ruled in substance that the accountant should be surcharged with all the personalty consisting of moneys at interest, and, finding a balance due the estate, reported a distribution accordingly.

Upon the argument of exceptions to the report, filed by the accountant, the court, SWARTZ, P. J., filed the following opinion:

At his death the testator was the owner of a farm and was

possessed of bonds, notes and cash, amounting to $3,000, stock on farm and other chattels, valued at $2,000. The widow survived her husband many years. The executor passed over to the widow the crops, stock and farming implements, and at her death little was left. He also paid over to her from time to time the moneys invested at the death of the testator. The executor, in his final account, claimed that the widow took an absolute estate in the testator's personalty. Upon exceptions, the auditor surcharged him with the moneys invested at testator's death, $2,400, and found a balance due the estate for distribution amounting to $2,173.80. The executor excepts to this report, alleging that the auditor erred in holding that the widow took but a life-estate under the testator's will.

We are of opinion that the widow took a life-estate in the personalty with power to consume the same, and the bequest over to the children applied only to such personal property as might remain after her death. The language of the will indicates such an intent, and all mere technical rules of construction must give way to the plainly expressed intention of the testator, if lawful: Reck's App., 78 Pa. 435. All the surrounding circumstances of the testator, his family, the amount and character of his property, may and ought to be taken into consideration, in giving a construction to the provisions of the will: Postlethwaite's App., 68 Pa. 479.

The testator provided first for his widow. She was the first object of his bounty. He gives her all his property and effects of whatsoever nature and kind, not merely the income of the property. No provision of any kind is made for the other legatees to take effect during her life. The personalty consisted in great part of crops, stock on the farm and farming implements. These she took under the will just as the testator left them at his death, and they were of such a character that their use, even for a limited period, constituted consumption. The estate was not large, and the testator in his care for her, as the first object of his bounty, no doubt considered the income insufficient for her comfortable support. The fact is, that it was not sufficient; for, during the many years that she survived the testator it was found necessary to convey [sic] almost the entire personal estate for her proper maintenance.

The word "residue," as used by the testator, implies the

right of consumption of the principal by the widow.  The word received this construction in Jauretche v. Proctor, 48 Pa. 471.  In that case, the will provided: "At the death of my above named wife, what I may have left her, that is to say, the residue, is to be divided in equal shares among my children." The court said: "This word, 'residue,' as used in this place, does not imply a residuum of estate or interest like a remainder, but a residuum of the property, or, as in the testator's own language, of 'what I may have left her;' and in this sense is exactly equivalent to 'surplus,' a word which was fully considered and expounded in Pennock's Est., 20 Pa. 268."

So in Ref. Church v. Disbrow, 52 Pa. 224, it was held, "that the words 'any part remaining' were equivalent to the word 'residue,' and imply that part of the interest derived might be so used and converted as not to be in existence at her death."

The word, residue, as used and connected by the testator, has the same meaning as the words, surplus, remaining personal property, if any left, any part remaining, what shall be left, when used in similar bequests: Jauretche v. Proctor, supra ; Pennock's Est., 20 Pa. 268; Straub's App., 1 Pa. 86 ; Hambright's App., 2 Gr. 320; Ref. Church v. Disbrow, supra; Follweiler's App., 102 Pa. 581.

If, then, the word "residue" is the equivalent of the foregoing words or phrases, the testator's widow, under the bequest to her, clearly had the right to more than the income of the personalty.  She could consume of the principal without any liability to the executor or the other legatees under the will. . . . .

The learned auditor concludes that Follweiler's Appeal is overruled by Hinkle's App., 116 Pa. 490, otherwise he would have followed the former.  No intimation of any such intent is given in Hinkle's Appeal.  If we are to give that effect to the latter case, it not only overrules a single case, but a line of decisions followed in Follweiler's Appeal.  The point raised in the case at bar is not discussed by the court in Hinkle's Appeal.  The court in that case discussed but two questions, whether the life-estate of Dr. Hinkle was enlarged to a fee, either by reason of the direction to pay out legacies, or by reason of the power of sale attached to the life estate.

And now, April 15, 1889, the first, second and third excep-

tions to the auditor's report are sustained, and the report is
referred back to the auditor to ascertain what balance, if any,
is in the hands of the accountant for distribution, and to make
distribution if any such balance is found under the foregoing
opinion of the court.

—The auditor having re-stated the account and reported a
distribution, in accordance with the foregoing opinion and de-
cree, exceptions thereto filed by John S. and Samuel Markley
were dismissed, and the report and distribution confirmed.
Thereupon these exceptants took this appeal specifying that
the court erred, inter alia: 1. In sustaining the exceptions to the
auditor's first report.   2. In holding that under the will of the
testator the widow took the personal estate absolutely.   5. In
not sustaining the exceptions to the auditor's second report, etc.

*Mr. Chas. Hunsicker*, for the appellant.

Counsel cited: Hinkle's App., 116 Pa. 490; Diehl's App., 36
Pa. 120; Grove's Est., 58 Pa. 429; Silknitter's App., 45 Pa.
365: Merkel's App., 109 Pa. 235; Drennan's App., 118 Pa. 176;
Bentley v. Kauffman, 86 Pa. 99; Myers's App., 49 Pa. 111;
Sheetz's App., 82 Pa. 213; Keene's App., 64 Pa. 268; Bender
v. Dietrick, 7 W. & S. 284; Hitchcock v. Hitchcock, 35 Pa.
393; Cowles v. Cowles, 53 Pa. 175; Rupp v. Eberly, 79 Pa.
141; Smith's App., 23 Pa. 9.

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson*), for the
appellee.

In addition to cases cited in the opinion of the court below,
counsel cited: Cox v. Sims, 125 Pa. 525; Brockley's App., 1
Pa. S. C. Dig. 142.

PER CURIAM:

We are of opinion that the learned court below disposed of
this case upon correct principles.  Under the will of Chris-
topher Markley, the widow took the personal estate absolutely;
that is to say, she had the right to use so much of it as was
necessary for her comfort and support.  It was only the residue
thereof that was to go to the testator's children after her death.
The only matter that leaves any doubt upon this question was
the manner in which the real and personal estate were blended

by the will.   But in view of the fact that a considerable portion of the personalty consisted of crops, stock on the farm, and farming implements, the mere use of which necessarily implied their consumption and destruction, and that the testator made no distinction between this character of property and money at interest, we are led to the conclusion that he intended his wife to take the whole personalty absolutely, if it was needed for her support.   It appears to have been needed, and, as his widow was the first object of the testator's bounty, it was a natural provision for him to make.   We think this view is fully sustained by the authorities referred to by the learned judge below in his opinion.

> The decree is affirmed, and the appeal dismissed, at the cost of the appellants.