HAMILTON SCOTT, R. W. SCOTT and JANE A. COULTER v. NANCY R. SCOTT, Appellant.

**Life estates:** PRESERVATION OF RESIDUE: SECURITY BY LIFE TENANT. Where the life use and enjoyment of specific articles of personal property is bequeathed, with the remainder over, the life tenant is not required to give security for the benefit of the remaindermen, in the absence of any intimation on the subject in the will: but where the residue consists of money or securities, of which the life tenant is only entitled to the income, the courts may require security against its loss or waste, upon a showing which does not exhibit that ordinary care and prudence of the life tenant essential to the preservation of the property. Evidence held to justify the requirement that security be furnished.

*Appeal from Iowa District Court.*— HON. R. P. HOWELL, Judge.

WEDNESDAY, FEBRUARY 12, 1908.

APPLICATION of the legatees entitled to certain moneys, mortgages, and stocks after the death of the life tenant for an order requiring said life tenant to give security that the *corpus* of the legacy be forthcoming at her death. The relief was granted as prayed, and defendant appeals. — *Affirmed.*

*Tom H. Milner,* for appellant.

*Ponham & Havner,* for appellees.

LADD, C. J.— The will of James Scott was construed in *Scott v. Scott,* 132 Iowa, 37, to bequeath $3,000 to his widow,

Nancy R. Scott, and the use of the residue of the estate during life, with remainder over to his heirs, who are the appellees in this case.   The estate consisted of personal property save a one-fourth interest in a hotel at Andes, N. Y., consisting of money and mortgages amounting to $18,600. After deducting the legacy to her there remained $15,600 worth of property of which she is entitled to the use and to the principal of which the appellees are entitled at her death. She was appointed executrix without bond, as recommended in the will, and has filed her final report asking her discharge as such and that she retain the $3,000 absolutely and the residue subject to the title in the remaindermen.   As a condition to so doing they demanded that security be exacted, and the district court required the execution of a bond in the sum of $25,000, with sureties, to be approved by the clerk of court, conditioned that upon her death all property coming into her hands as life tenant will be promptly turned over to those entitled thereto.

The early practice in England was to require security from the life tenant for the protection of the remainderman before allowing the former the possession of personal property of any character to the use of which he had become entitled by bequest, but a distinction later was drawn between specific bequests of property and those of the residue of an estate; and the rule may be regarded as firmly established that, where specific articles are left to legatees for life, with remainder over, all required, in the absence of a showing of danger of loss or waste, is that an inventory thereof be indorsed by the life tenant, with acknowledgment that these are held for life only, with title in the remainderman.   See *Foley v. Burnell,* 1 Brown's Ch. R. 249.   Where that of which the use for life is bequeathed is money or its equivalent, or is the residue of an estate which is money or its equivalent, or is such property as must be converted into money, a different rule obtains.   Unless it is to be inferred from the language of the will that the legatee is to have possession, he

will be entitled to no more than the income to be derived
from a proper investment of the funds by the executor or a
trustee to be appointed.   *Hetfield v. Fowler,* 60 Ill. 45.
The will before us, however, plainly indicates the intention
of the testator that his widow shall have custody of and
manage the property during her life.   The third clause reads:
" The rest, remainder and residue of my property of every
kind and nature I will, devise and bequeath to my beloved
wife, Nancy R. Scott, to have, hold, use and enjoy during
the term of her natural life, except that I will, devise and be-
queath her the sum of $3,000 absolutely, and the balance to
her exclusive use, benefit, behoof and enjoyment during the
term of her natural life as aforesaid."   The words " have "
and " hold " as here employed manifest an intention that she
receive the property into her custody and retain the same
during the period named.   *Gee v. Hasbrouck,* 128 Mich. 509
(87 N. W. 621); *Rountree v. Dixon,* 105 N. C. 350 (11 S.
E. 159); *Stansbury v. Hubner,* 73 Md. 228 (20 Atl. 904,
11 L. R. A. 204, 25 Am. St. Rep. 584).   But there is no
intimation in the instrument that she may encroach at her
discretion on the principal, in which event no security should
be exacted.   *Pierce v. Stidworthy,* 81 Me. 50 (16 Atl. 333);
*In re Will of Ira Ryerson,* 26 N. J. Eq. 43; *In re Garrity,*
108 Cal. 463, 471, (38 Pac. 628, 41 Pac. 485).   At her death
the bequest is of " the rest, residue, and remainder of my
property of every kind and nature to my legal heirs, share
and share alike."   The expression " rest, residue and re-
mainder " is that portion of the estate not given to testator's
wife absolutely in the previous clause.   Had the previous
clause given her the use only of the entire estate, the right of
diminishing the property while in her hands might be im-
plied.   See *In re Garrity's Estate, supra.   Markley's Estate,*
132 Pa. 352 (19 Atl. 138); *Warren v. Webb,* 68 Me. 133;
*Martin v. Martin,* 69 Miss. 315 (13 South. 267).   But it
had given her a part and the use for life of the remainder, so
that the expression has direct application of the portion un-

disposed of, i. e., the *corpus* of that portion of the estate to which she is given the life use. The language employed furnishes no intimation of any exemption or requirement of security from the life tenant. That she was exonerated from executing a bond as executrix is not alone sufficient to warrant the inference that he also intended that no security should be exacted upon the determination of her duties as such and when she assumed the management of the property herself and as trustee for the remainderman. There being no ambiguity in the language employed, parol proof of the declarations of the deceased as to his purpose was rightly excluded.

We have, then, the naked question whether, in the absence of any intimation on the subject in the will, security should be exacted from the life tenant for the protection of the remainderman when money or its equivalent is bequeathed to the former, with remainder over. The rules on the subject are clearly stated in *Whitehouse v. Russell,* 80 Me. 297 (14 Atl. 197, 6 Am. St. Rep. 200): " A gift of the use of personal property for a lifetime, with a gift over, as it is here, is to be regarded according to the nature of the property and other circumstances. If of perishable articles, the use of which consists in their consumption, it amounts from necessity to an absolute gift of the property. If of articles which may depreciate by using, but which will not necessarily be consumed or worn out in that way, a full title thereto is not given; but the life legatee, under ordinary circumstances and risks, is allowed to retain possession of the articles without giving security for their preservation. Circumstances may, however, alter the case as to such property. Where the use of money is given, the gift is of the interest only; and, as such property may be easily lost or wasted, the general rule is that the legatee must give some reasonable security to safely preserve the funds of the remainderman, or the money may go into the hands of a trustee, of whom a bond would be required." *In re McDougall,* 141 N. Y. 21 (35 N. E. 961);

18 Am. & Eng. Ency. of Law (2d Ed.) 790.　In 2 Warner's American Law of Administration, section 456, the author says: "Where a testator bequeaths a residue consisting of money or property whose use is the conversion into money, with the remainder to another, it is the duty of the executor to take security from the life tenant protecting the interest of the remainderman, or to convert the fund into cash and invest it for the benefit of all who are entitled under the will. So where the executor is himself the devisee for life, he may be compelled after completing his duties as executor to give security for the benefit of the remainderman, although relieved from bond as executor."

In many of the authorities, however, the matter of exacting security is regarded as discretionary with the court, for, the testator having directed that the life tenant have possession of and management of the property without suggesting indemnity, the fair inference seems to be that none was thought necessary.　Thus it was said *In re Camp,* 126 N. Y. 377 (27 N. E. 799) that "generally, before making an order for such security, there must be facts alleged and proved tending to show the property would be unsafe and insecure in the hands of the tenant for life."　*In re Garrity, supra,* the court observes that: "The rule is one of equity, established by courts for the protection of the remainderman, in the absence of any direction in the will; but the rule thus established must yield to the terms of the will, and if it appears from a proper construction of the will that it was the intention of the testator that the property should be placed in possession of the life tenant without security, such intention will be carried out.　It is to be assumed that the testator intended the life tenant to have the full enjoyment during his lifetime of the property bequeathed to him, and that this enjoyment shall not be impaired, except for the protection of the remainderman.　The testator has the right to make the life tenant the trustee of the property bequeathed, without requiring any security from him; and very slight indications

in the will will be construed as showing that the testator intended the life tenant, rather than the executor, to be the trustee, subject, of course, to the general rules applicable to the obligations of a trustee to his *cestui que* trust. If the testator has not required such security to be given by the life tenant, courts are not authorized to require it, in the absence of any showing of danger or liability of waste; otherwise, the will of the testator that the life tenant shall enjoy the property will be frustrated." See *Langworthy v. Chadwick,* 13 Conn. 42; *Hodge v. Hodge,* 72 N. C. 616; *Cheshire v. Cheshire,* 37 N. C. 569; *Howard v. Howard's Ex'rs,* 16 N. J. Eq. 486. We are inclined to regard this the more reasonable rule, for it is to be inferred from the giving the life tenant the management of the residue of the estate without fixing conditions or requiring security that the testator intended to repose confidence in his fidelity.

But the interest of the remainderman in moneys or securities is more precarious than that in specific articles of personal property, because ordinarily more readily lost, secreted, abstracted, or converted, and the courts will act with greater caution in guarding the respective interests of the parties. The record before us shows that the life tenant is not kindly disposed toward the remaindermen; that she has no property of her own save some household goods and the $3,000 left her under the will; that she does not maintain a home, but rooms while in the State; that she spends a large portion of her time in the State of New York, and expects to do so in the future; that she has buried her husband there, and expects to be buried at his side; that all her relatives live there; that she had considered moving there but was not decided. There is no proof of loss in her care of the estate as executrix, nor that any of the funds in her hands as executrix has been unwisely invested. But it does appear that loans have been made without personal investigation or inquiry as to the security, and that at least $6,000 has been paid by her for stock in the German-American Coffee Company, a cor-

poration with headquarters in Mexico, without any adequate inquiry as to its value. Possibly these investments are safe, and there is nothing in the record to show that they are or to justify a contrary conclusion, but the manner of making them does not exhibit the care and prudence ordinarily essential for the preservation and conservation of property. Indeed they suggest the thought that the funds would be safer and she would be better assured of a continuing income were they in other hands. But the testator plainly indicated that she might have their custody and management, and in view of this the district court rightly ordered that they be delivered to her upon the giving of ample security that the *corpus* of the legacy be turned over to the remaindermen upon her death. While she testified that she was undecided as to whether she would leave the state, it was not denied but that she had and expected to pass most of her time in New York. In view of this, her feeling toward the appellees and her manner of handling the funds intrusted to her care, we are not inclined to disturb the order of the trial court.— *Affirmed*.