### VAN LEUVEN *v.* INGHAM CIRCUIT JUDGE.

INFANTS—JUVENILE DELINQUENTS—CRIMINAL LAW—APPEAL FROM PROBATE COURT.

From special proceedings in probate court relating to juvenile delinquents, under Act No. 6, Extra Session 1907, and Act No. 310, Pub. Acts 1909, no appeal lies; the statute providing for appeals generally from orders of the probate court, 1 Comp. Laws, § 669, not applying to such proceedings. BLAIR and MCALVAY, JJ., dissenting.

Mandamus by Eva Van Leuven to compel Charles B. Collingwood, one of the circuit judges for the county of Ingham, to vacate an order dismissing an appeal from an order of the probate court committing the relator to the Industrial School for Girls at Adrian. Submitted December 1, 1910. ( Calendar No. 24,313.) Writ denied June 2, 1911.

*S. B. Roe* and *George R. Heck,* for relator.

*Franz C. Kuhn,* Attorney General, and *Walter S. Foster,* Prosecuting Attorney (*Arthur P. Hicks,* of counsel), for respondent.

BROOKE, J. This is an application for a mandamus to

compel the circuit court of Ingham county to entertain jurisdiction of an appeal from the probate court of said county, in a matter arising under Act No. 6 of the Extra Session of 1907, as amended. Relator, a child of 15 years of age, was proceeded against under the provisions of said act. She was tried by a jury and found to be a "delinquent child," whereupon the probate court committed her to the Industrial School for Girls at Adrian, until she shall arrive at the age of 21 years. Relator thereupon perfected an appeal to the circuit court, which appeal was, on motion, dismissed. Relator contends that an appeal lies by virtue of section 669, 1 Comp. Laws:

"In all cases not otherwise provided for, any person aggrieved by any order, sentence, decree or denial of a judge of probate, may appeal therefrom to the circuit court for the same county," etc.

Jurisdiction in juvenile matters was conferred upon probate courts throughout the State by Act No. 6 of the Extra Session of 1907, except in three counties. By the Constitution of 1909, Art. 7, § 13, original jurisdiction in all cases of juvenile delinquents and dependents was conferred upon probate courts and the judges thereof. Following the adoption of the Constitution, the "juvenile act," so called, was amended by Act No. 310 of the Public Acts of 1909, so as to conform with the Constitution as to jurisdiction. Neither in Act No. 6, *supra,* nor in the amending Act No. 310, *supra,* is there any provision for an appeal from the finding or determination of the probate court to the circuit court.

It is urged by relator that, in passing the two acts in question, the legislature must be presumed to have acted with knowledge of the existence upon the statute books of section 669, 1 Comp. Laws, which was evidently considered sufficient for the protection of those desiring to appeal. We have no doubt that it may be presumed that the legislature had such knowledge; but we do not think it necessarily follows that it was believed that that section provided for an appeal in juvenile matters. A careful

review of the act as amended leads to the conclusion that the legislature sought, by its enactment, to provide in a humane manner for the care of unfortunate children who, by reason of immoral environment and lack of healthy restraining home influences, were found to be committing offenses against law and decency. The proceeding provided by the statute is not criminal in character and is intended to be solely in the interest of the child and of the community, which profits if its youth are reared amid moral and industrious surroundings, and suffers if they are permitted to grow up among the idle and vicious. Taking this view of the purpose of the legislation and examining the act itself, we are constrained to hold that it was not intended by the legislature that an appeal should lie. Several considerations impel us to this view. In the first place, the only judicial officer clothed by the act with the power of exercising discretion in the care and disposition of a juvenile delinquent is the probate judge. He, and he alone, may determine whether the child shall be returned to its parents or guardians, placed upon probation, or committed to one of the several institutions named in the statute. No machinery is provided for guarding the interests of the child upon appeal. If an appeal be allowed, it must be to the circuit court, a court of general criminal jurisdiction, where the delinquent must be tried in accordance with the general rules of criminal procedure. This is wholly at variance with the spirit and tenor of the act. Weight is added to this view when we consider that the act itself provides that, in certain specified cases, the delinquent may, at the discretion of the probate judge, be proceeded against in the ordinary criminal courts.

The right to an appeal is entirely statutory. In *Sullivan* v. *Haug*, 82 Mich. 548 (46 N. W. 795, 10 L. R. A. 263), it is said:

"No person has a constitutional right to a second trial, after having been duly convicted before a court of competent jurisdiction, by an appeal to another tribunal; neither is there an inherent right to appeal from a judgment of

an inferior to a court of superior jurisdiction for the purpose of securing a second trial upon the merits. The right to an appeal is and always has been statutory, and does not exist at common law. It is a remedy which the legislature may in its discretion grant or take away, and it may prescribe in what cases, and under what circumstances, and from what courts, appeals may be taken; and, unless the statute expressly or by plain implication provides for an appeal from a judgment of a court of inferior jurisdiction, none can be taken"—citing many cases.

In considering the effect of section 669, 1 Comp. Laws, with reference to condemnation proceedings (*U. S. Gypsum Co.* v. *Kent Circuit Judge*, 150 Mich. 668 [114 N. W. 666]), this court said:

"It is the general rule that, unless the statute expressly gives an appeal, there is no appeal; nor can a review be had by writ of error in special or extraordinary proceedings, not according to the course of the common law"—citing cases.

In *Sparrow* v. *Ingham Circuit Judge*, 109 Mich. 272 (67 N. W. 112), it was held that an appeal did not lie, under the section in question, from an order committing a person to the insane asylum.

We have reached the conclusions herein expressed with some difficulty, for, though humane in its purpose and reformatory rather than punitive, the act confers a very broad authority upon the probate judge, and it cannot be doubted that a commitment to one or other of the institutions named in the act involves restraint of the liberty of the delinquent, accompanied by a certain odium which will always attach to the individual so committed. This, however, is the lesser of two evils in cases where commitment is proper. If an error is committed, as to the fact of delinquency, the result would be truly unfortunate. It is to be presumed, however, that the legislature gave due consideration to this contingency, and, after such consideration, enacted the law in its present form. Our opinion as to the wisdom of this feature of the law is a matter of

no consequence. It is the duty of courts to construe, not make, the law.

The writ must be denied.

Ostrander, C. J., and Bird, Hooker, Moore, and Stone, JJ., concurred with Brooke, J.

Blair, J. (*dissenting*). This is an application for mandamus to compel the circuit court of Ingham county to entertain jurisdiction upon an appeal from the probate court of said county in a proceeding under Act No. 6, Extra Session 1907, as amended by Act No. 310, Pub. Acts 1909. Relator, a child of 15 years of age, was proceeded against under the provisions of said act. She was tried by a jury and found to be a delinquent child, whereupon the probate court committed her to the Industrial School for Girls at Adrian until she should arrive at the age of 21 years. Relator thereupon perfected an appeal to the circuit court, which appeal was, on motion, dismissed. Relator contends that an appeal lies by virtue of section 669, 1 Comp. Laws, which provides that:

"In all cases not otherwise provided for, any person aggrieved by any order, sentence, decree or denial of a judge of probate, may appeal therefrom to the circuit court for the same county," etc.

The sole question presented to us for our determination is whether said section 669 applies to determinations of the probate court under said Act No. 6, Ex. Sess. 1907, as amended. A similar act, being Act No. 312, Pub. Acts 1905, entitled "An act to regulate the treatment and control of dependent, neglected and delinquent children and to establish juvenile courts," was before this court for consideration and was held to be unconstitutional for reasons not affecting the present act. *Hunt* v. *Wayne Circuit Judges*, 142 Mich. 93 (105 N. W. 531, 3 L. R. A. [N. S.] 564). At a special session of the legislature of 1907, the said Act No. 6, under which these proceedings are had, was enacted, entitled—

"An act to define and to regulate the treatment and control of dependent, neglected and delinquent children; to prescribe the jurisdiction of the probate courts and the powers, duties and compensation of the probate judges with regard thereto; to provide for the appointment of county agents and probation officers and to prescribe their powers, duties and compensation."

The counties of Houghton and Marquette and the city of Detroit were excepted from the provisions of the act.

In March, 1908, this court held the Wayne county juvenile court act of 1907, Local Act No. 684, unconstitutional in so far as it attempted to provide for the trial of offenses against children punishable as crimes by a jury of six. *Robison* v. *Wayne Circuit Judges*, 151 Mich. 315 (115 N. W. 682).

In 1909, sections 1, 5, 9, 11, and 13 of Act No. 6, Extra Session 1907, were amended, and by section 13 "all acts or parts of acts inconsistent herewith, whether local or general, are hereby repealed."

The applicability and interpretation of said section No. 669, 1 Comp. Laws, has so frequently been passed upon by this court that it only becomes necessary to examine our own decisions to ascertain whether the instant case falls within its provisions.

In *Goss* v. *Stone*, 63 Mich. 319 (29 N. W. 735), it was held that an appeal lies, under this section, to the circuit court from the order of the probate court appointing a general guardian for a minor. Chief Justice CAMPBELL, who wrote the opinion of the court in that case, speaking of this section, used the following language:

"This language is broad enough to cover any order whatever, and *must unquestionably cover any order which affects the merits of a proceeding. The only exceptions practically recognized have been such interlocutory and subsidiary orders as are made during the pendency of suits or proceedings, and which end with or before them.* Such instances occur in the appointment of guardians *ad litem* ( *Walker* v. *Hull*, 35 Mich. 488), temporary allowances of some kinds ( *Moore* v. *Moore*, 48 Mich. 271 [12 N. W. 180]), and the usual

orders and directions regulating the current procedure.
*  *  *

"*But it is impossible to create an exception to the
right of appeal in any case where the order complained
of is a principal matter of jurisdiction, and not a
mere step in something else.* The appointment of a per-
manent guardian is one of the most important things that
can happen to an infant, involving the custody of all
property, and, where there are no parents, generally in-
volving also the control of the. person. In all countries
this jurisdiction has been regarded as of the highest im-
portance. In England it was vested in the highest court
in the realm, and, while in this country it has frequently
been placed in courts exercising probate powers, it has
never been considered as not within judicial supervision
in some way, and has generally been put in courts from
which an appeal lies involving a rehearing on the merits."

In *Cole* v. *Cole's Estate,* 125 Mich. 655 (85 N. W.
113), it was held that an order fixing the amount to be
paid by executors under the will was an appealable order,
quoting in support of the opinion from *Goss* v. *Stone,*
*supra.*

In *Hopper* v. *Livingston Probate Judge,* 137 Mich.
124 (100 N. W. 266), an order of the probate court deny-
ing a petition to compel a guardian to account was held
to be an appealable order, under this same section; the
court citing *Goss* v. *Stone.*

The case was again cited with approval in *Erwin* v.
*Ottawa Circuit Judge,* 138 Mich. 271 (101 N. W. 537);
Mr. Justice HOOKER, writing for the court, saying in
that case, after quoting from *Holbrook* v. *Cook,* 5 Mich.
230:

"We have frequently since held it inapplicable to or-
ders made by the probate court. Thus, in *Walker* v.
*Hull,* 35 Mich. 488, it was held that an order appointing
a special administrator was not reviewable, though one
appointing a general guardian is for obvious reasons.
See *Goss* v. *Stone,* 63 Mich. 319 (29 N. W. 735). While
in that case the court carefully preserved the right of ap-
peal from orders affecting the merits of a proceeding, it
is said that the exceptions include 'such interlocutory and

subsidiary orders as are made during the pendency of suits or proceedings, and which end with or before them,'" etc.

It may be considered as settled, therefore, that any order which affects the merits of a proceeding and is a principal matter of jurisdiction within the scope of the general jurisdiction of the probate court is appealable, under the section in question.

That the determination in the present case is a determination upon the merits and fraught with the most important consequences to the State and to the minor is too plain to require discussion. In comparison with the effect upon a child of a determination of delinquency, the appointment of a general guardian sinks into insignificance. It only remains to consider whether it is within the scope of the general jurisdiction of the probate court.

Section 13 of article 7 of the Constitution of 1909 reads as follows:

"SEC. 13. In each county organized for judicial purposes, there shall be a probate court. The jurisdiction, powers and duties of such courts and of the judges thereof shall be prescribed by law, *and they shall also have original jurisdiction in all cases of juvenile delinquents and dependents.*"

A mere reading of this provision answers the question proposed. The probate court, as a court, is given original jurisdiction over cases like the present, of which it cannot be deprived by any power save that of the people by way of an amendment to the fundamental law. The proceedings under the act in question as amended are judicial in their character, and have all the essential characteristics of a trial in a court of common law.

Section 1 of the act (No. 6, Ex. Sess.), after defining a "delinquent child" to include "any boy or girl under 17 years of age who violates any law of this State or any city or village ordinance, or who is incorrigible," etc., provides:

"Any child committing any of the acts herein men-

tioned shall be deemed a juvenile delinquent person and shall be proceeded against as such in the manner hereinafter provided."

Section 2 provides:

"The probate court shall have original jurisdiction in all cases coming within the terms of this act, and while proceeding under this act shall be termed juvenile division of the probate court. In all trials under this act, *any person interested therein may demand a jury of six,* or the judge of his own motion may order a jury of the same number to try the case, *and the jury so ordered shall be summoned and impaneled in accordance with the law relating to juries in courts held by justices of the peace.*"

Section 3 provides for the place of holding the trials:

" The proceedings and finding of the court in all examinations and trials of such cases shall be entered in a book or books to be kept for that purpose and shall be known as the Juvenile Record."

The section further provides for a place of detention pending the trial, and further:

"Any child held in said place of detention shall have the right to give bond or other security for its appearance at the trial of such case, and the court may, in any such case, appoint counsel to appear and defend, on behalf of any such child, who shall be paid out of the general fund of the county or city for such services, such sums as the court shall direct: *Provided,* that the prosecuting attorney shall appear for the people when ordered by the court."

Section 5 provides for the filing of a sworn petition upon knowledge or information and belief, showing the facts constituting the child a delinquent child within the meaning of the act, and if, after investigation by the county agent or probation officer, it shall appear that the public interest and the interest of the child will be thereby subserved—

"A summons shall issue reciting the substance of the petition and requiring the person or persons having custody or control of the child, or with whom the child may

be, to appear with the child at a place and time which shall be stated in the summons."

And the appearance of the person so summoned may be enforced by contempt proceedings.

"On the return of the summons or writ, or as soon thereafter as may be, the court shall proceed to hear and dispose of the case upon such testimony as may be produced. * * * If the child be found to be wilfully wayward and unmanageable, and in any case upon the adjudication of delinquency, if, in the judgment of the court, the welfare of the child and the interests of the public require, the court may cause him or her to be sent to the Industrial School for Boys at Lansing or the Industrial Home for Girls at Adrian or to any State institution authorized by law to receive such boy or girl," etc.

By section 6:

"Whenever any child under the age of seventeen years is arrested, with or without a warrant, such child shall be taken immediately before the juvenile division of the probate court, and the officer making the arrest shall immediately make and file a petition against such child as hereinbefore provided; and the said court shall proceed to hear and determine the matter in like manner as hereinbefore provided."

It is contended, however, that this case is ruled by *Sparrow* v. *Ingham Circuit Judge*, 109 Mich. 272 (67 N. W. 112). I do not agree with this contention. In that case the proceedings were had under Act No. 204 of the Public Acts of 1895, entitled—

"An act to amend section 21 of Act No. 220 of the Session Laws of 1889 entitled, An act to amend sections 21 and 22 of Act No. 135 of the Public Acts of 1885, entitled, *'An act to amend, revise and consolidate the laws organizing asylums for the insane and regulating the care and management thereof,'*" etc.

As remarked in the opinion in that case:

"The authority conferred upon the probate judge is not found in a statute providing for the organization and prescribing the jurisdiction and duties of judges of probate and probate courts. The title of the act in which it

is incorporated relates to the organization of asylums for the insane, and the regulation of their care and management. The legislature might, with equal propriety, have provided for a board of physicians, or authorized any other officer or tribunal to hold the inquest. This has been frequently done. Where a person has escaped indictment, or been acquitted of a criminal charge on the ground of insanity, the court is required to make a further examination, and, upon ascertaining that his insanity continues, may order him sent to an asylum. So, if a person is in confinement under indictment or sentence of imprisonment on a criminal charge, or on civil process, the circuit court commissioner of the county, or, in his absence, the judge of the circuit court, is charged with the duty of holding the inquest. 1 How. Stat. §§ 1908–1910. The statute makes no provision for appeals in these cases, and none has ever been supposed to exist."

As hereinbefore shown, the authority conferred in the instant case comes from the Constitution itself and the statute in execution of its terms "providing for the organization and prescribing the jurisdiction and duties of judges of probate and probate courts." The legislature might not with equal propriety or with any propriety at all have provided for a board of physicians or for any other board or tribunal than the one specified in the Constitution, and the proceedings under the act are named and actually constitute a trial and not an inquest. So far as concerns the reasons so strongly set forth in the *Sparrow Case* indicating that the legislature would not be likely to provide for an appeal, those reasons have been weighed and found wanting by a subsequent legislature, which established the rule of public policy for this State that it is better that many insane persons should suffer inconvenience than that one sane person should be deprived of the right to appeal.

Again, it is contended that this is a special proceeding, and since the right of appeal is entirely statutory, and no such right is conferred by the statute, the general probate statute of appeals does not apply. I cannot agree with this conclusion. This statute is no more a special pro-

ceeding than proceedings for the probate of wills or for the settlement of the estates of deceased persons and of guardians; in fact, the proceedings are somewhat analogous to proceedings for guardianship, since the statute provides for decreeing the child to be a ward of the court. But, however that may be, these proceedings are not special in the sense that they are outside of the regular exercise of the jurisdictional powers of the probate courts since the new Constitution, but are directly within it and a part of its usual and regular functions as a court. There was no need of any provision in the statute, since it plainly comes within the general statute, unless we are to overrule the cases hereinbefore referred to.

In my opinion, therefore, the writ of mandamus should issue.

McALVAY, J., concurred with BLAIR, J.